Robert A. Wright v. Commissioner.
Wright v. Commissioner
Docket No. 26091.
United States Tax Court
1952 Tax Ct. Memo LEXIS 293; 11 T.C.M. (CCH) 232; T.C.M. (RIA) 52071; March 14, 1952
Bernard K. Bettelheim, Esq., and Arthur J. Hansel, C.P.A., Box 253, Beverly Hills, Calif., for the petitioner. Benjamin H. Neblett, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies in income tax for the calendar years 1944, 1945 and 1946 in the amounts of $15,269.10, $44,641.84, and $43,429.79 for the respective years. These deficiencies resulted in the greater part from respondent's determination that a valid partnership for income tax purposes did not exist between Robert A. Wright and his two adult daughters, Virginia Prentice and Pauline Peters, for the years 1944, 1945 and 1946, and therefore the income from the business enterprise in fact was the income of Robert A. Wright alone during the tax years. While other adjustments were *294 made in the deficiency notices, the sole issue before us is whether a valid partnership existed between the petitioner and his daughters. Findings of Fact A portion of the facts were stipulated and are so found. Petitioner filed his individual income tax returns for 1944, 1945 and 1946 with the collector of internal revenue for the sixth district of California, at Los Angeles. Petitioner has been engaged in the commercial refrigeration business for approximately 40 years, and in San Diego, California, since 1938 or 1939. He operated his business as a sole proprietorship prior to May 1, 1944. His business in San Diego was very successful and, at times, he employed as many as 50 people in his business. In 1941 petitioner was sued by Christine Crynes, also known as Christine Wright, a woman who had taken an active part in the development of his San Diego business, for a partnership interest. This action was settled and she acquired a one quarter interest in his business. Petitioner later, sometime prior to May 1, 1944, reacquired this quarter interest, but she continued to take an active part in the business. Petitioner was married but had lived apart from his wife for some *295 20 years. Petitioner and his wife, on April 1, 1943, entered into a separation agreement whereby it was agreed between husband and wife that the refrigeration business was the sole property of petitioner. Shortly thereafter, his wife, in an attempt to modify the separation agreement, brought suit for divorce. She was awarded the divorce, but the divorce decree did not alter the terms of the separation agreement. The refrigeration business was adjudged to be the sole property of petitioner. On or about June 12, 1944, petitioner executed and delivered two Bills of Sale; each Bill of Sale purported to transfer a one-third interest in the refrigeration business to each of his two adult daughters, Virginia Prentice and Pauline Peters. The book value of the one-third interest at that time was $17,643.56. Each of his daughters made and delivered to him a promissory note, payable on demand, for that amount. At the same time petitioner, Virginia Prentice, and Pauline Peters executed a partnership agreement which was to be effective as of May 1, 1944. The pertinent provisions of this agreement are as follows: "1. That the name of the partnership is WRIGHT REFRIGERATION SERVICE. * * * *296 "4. The term of this partnership is two (2) years from May 1, 1944. "5. First party is hereby constituted the Manager of this partnership, and as such shall be charged with the duty and responsibility of actively conducting and managing its affairs for whatever compensation as may be determined and shall devote his personal services diligently to the partnership business, and shall at all times use his best efforts to promote its welfare, subject and subordinate to the rights of the other parties hereto as partners. "Second and third parties shall devote whatever time and attention and whatever services they are able to said partnership business, but neither shall be under any obligation to do so. * * *
"8. Each party hereto has, as a partner, an equal one-third interest in the partnership business, its assets and profits, and in the event of any losses, each partner shall bear an equal one-third of the same. "The profits shall be distributed to the partners entitled thereto, and the losses, if any, shall be paid to the partnership by the partners at such time or times as may be agreed upon by all of the partners. * * *
"First party shall have the right to draw *297 from said partnership business such sum or sums from time to time as he may elect and all such withdrawals shall be charged to first party. "No withdrawals from the partnership business shall, however, be made by second party nor third party, nor shall either of said parties be entitled to receive in cash any profits until the several promissory notes described in Paragraph 10 hereof shall have been paid in full. * * *
"10. Second and third parties have executed to first party their separate, written promissory notes representing their present indebtedness to first party, and said second and third parties covenant and agree with first party to apply on said notes any and all profits to which either she or they may be entitled, until such time as said promissory notes or any renewals or extensions thereof have been paid in full, and second and third parties hereby unconditionally and irrevocably instruct first party, as the Manager of said partnership, to disburse said profits to himself, and to apply the same on said promissory notes. "11. It is understood and agreed by and between the parties hereto that each party hereto has executed, contemporaneously with this agreement, *298 his or her Last Will and Testament, and that the Wills of second party or third party shall not be revoked or changed, in so far as the same relate to the partnership business, without the written consent of the other partners, and that such execution is in consideration of a like act by the other partners. That upon the death of one or more of the partners herein, the interest of said partner in the partnership business shall be governed and controlled by the provisions of the Last Will of said partner. "Each partner states that he or she is fully conversant with the terms, conditions and provisions of the Wills of the others, and full [sic] approves the same as far as the same relate to the partnership business. * * *
"13. In the event any of the partners hereto desire to withdraw from said partnership, notice in writing shall be given to the remaining partners of such intention. Upon such withdrawal, the remaining partners shall have an option, as hereinafter set forth, to pay to such withdrawing partner, and such withdrawing partner in such an event shall be obligated to accept from the remaining partner his or her proportionate share of the partnership business, as *299 the same may be fixed and determined by an impartial appraisal to be made by the auditor of the partnership, G. Van Saanen Company, or its successor. "For thirty days after receipt of the written notice of withdrawal, the remaining partners shall have the unconditional and irrevocable right and option to purchase the interest of such withdrawing partner, and such partner shall have no right to sell, transfer or assign his or her interest in the partnership during said thirty-day period. In the event that the remaining partners fail or refuse to purchase said interest before the expiration of said thirty-day period, then such withdrawing partner shall have the right to sell such interest to any other person or persons, provided, however, that before making such sale, said withdrawing partner shall first give to the remaining partners the first right to buy said interest at the price and upon the terms at which said interest is offered for sale. "In the event of the sale of his or her partnership interest by a withdrawing partner to the remaining partners, the purchase price shall be paid by the execution of five (5) unsecured promissory notes, each representing one-fifth of the *300 amount of the purchase price, and each bearing interest at 3% per annum, payable at maturity, said notes to be due on or before one, two, three, four and five years from and after the date of the sale of such partnership interest; said notes to be executed by the remaining partners as makers, to the withdrawing partner as payee." And on July 20, 1944, the partnership agreement was modified by the following provisions: "15. It is further agreed by and between the partners that before the distribution or the allocation of any profits from the partnership business to any of the partners, there shall first be deducted on a quarterly basis the estimated income tax of each partner; that each such deduction shall be charged to the respective interests of the partners in the profits from the partnership. "In the event that there should not be, during any quarterly period, sufficient cash in the partnership account to pay the quarterly installments of income tax of Second and/or Third Parties, first party agrees to advance for and charge to the accounts of said Second and/or Third Parties the amount of cash required to pay such quarterly installment of income tax, in so far as the same *301 concerns the partner's interest in the partnership property. By quarterly installment is meant the established period for the payment of individual income taxes." The wills as required by section 11 of the partnership agreement were prepared and executed. The wills of both daughters contain the following provision: "FOURTH: I state that I own as my sole and separate property a one-third interest in a partnership known as WRIGHT REFRIGERATION SERVICE, located at 1337 India Street, San Diego, California, which is my sole and separate property. I give and bequeath my said interest in said partnership to my father, ROBERT WRIGHT, provided, however, that as a condition precedent, he shall forgive the promissory note for $17,693.56, executed by me on June 13, 1944, payable to my father." The petitioner's will contains the following provisions: "FIFTH: I hereby give and devise to each of my two daughters, VIRGINIA PRENTICE and PAULINE PETERS, the sum of ONE HUNDRED DOLLARS ($100.00). "SIXTH: All of the rest, residue and remainder of my property, whether real, personal or mixed, wheresoever situate and however held, I give, devise and bequeath to CHRISTINE WRIGHT." Except for occasional *302 conferences in the evening or over the telephone, petitioner's daughters were never actively engaged in the refrigeration business during the two-year period established in the partnership agreement. During this entire time, Pauline Peters was employed full time by a jewelry store, while Virginia Prentice worked for an aircraft manufacturer. In 1944, 1945 and 1946 Pauline Peters received from the jewelry store the following sums: $1,867.95, $1,433.04, and $1,197.12, respectively, for those years. In these same years Virginia Prentice received from the aircraft manufacturer $1,012.54, $2,193.77 and $2,174.88. The books, during the years before us, were kept on a partnership basis. The petitioner received the following amounts as salary for his work as manager: in 1944, nothing; in 1945, $15,000; in 1946, $7,500. The daughters did not receive a salary from the refrigeration business. Out of the earnings of the business the amount of $70,600.17 was applied by the petitioner during the period begun May 1, 1944, and ended June 30, 1946, to the following purposes: Payment of notes executed by his
daughters, Pauline Peters and Vir-
ginia Prentice, to petitioner (each note
in the amount of $17,693.56), which
sum was included in the respective
income tax returns filed by them
$35,387.12
Payment of income taxes on income
of the business included in the income
tax returns filed by Pauline Peters
and Virginia Prentice
$32,138.59
For payment on Adair St. property
owned by petitioner, the amount of
which payment was included as the
income of Virginia Prentice for in-
come tax purposes
1,951.58
Balance of $70,600.17 representing in-
come of business which was included
in income tax returns of petitioner's
daughters: Pauline Peters
866.44
Virginia Prentice
256.44
$70,600.17
*303 During 1944 and 1945 the petitioner withdrew $15,314.86 and $32,609.46, respectively, from the business, and during the period January 1, 1946, to June 30, 1946, he withdrew $8,258.56, which amounts include salary $15,000 in 1945 and $7,500 in 1946. Sometime in the spring of 1946, the promissory notes, which were executed by the daughters for their interest in the business, were paid. On May 31, 1946, petitioner, Virginia Prentice, and Pauline Peters organized a corporation known as Wright Refrigeration Company. On or about June 30, 1946, the assets of Wright Refrigeration Service were transferred to the corporation at book value in return for $124,100 of the capital stock of the corporation. Corporate stock was authorized and issued in the following amounts: Petitioner
422 shares
Virginia Prentice
420 shares
Pauline Peters
399 shares
On May 23, 1946, a voting trust agreement was executed by the shareholders in the corporation. Some of the pertinent provisions of the agreement are as follows: "1. That VIRGINIA PRENTICE and PAULINE PETERS will deliver their stock certificates, representing 819 shares in said corporation, endorsed in blank, to R. A. WRIGHT; *304 "2. That R. A. WRIGHT will surrender said certificates to the Corporation, in exchange for a certificate to be issued to him in his name as Trustee; "3. That R. A. WRIGHT, as Trustee, shall possess and be entitled to exercise the right to vote all of said shares of stock standing in his name as such Trustee, at all regular and special meetings of the shareholders of Wright Refrigeration Co., and may vote for, do or assent or consent to any act or proceeding which the shareholders of said Company might or could vote for, do or assent or consent to, and shall, subject to the provisions of this Agreement, have all the powers, rights and privileges of a shareholder of said Company. * * *
"7. This Agreement shall terminate twenty-one (21) years from date hereof, and shall be irrevocable during the lifetime of R. A. Wright." Partnership returns under the name of Wright Refrigeration Service were executed by the petitioner and filed for the business for 1944, 1945 and 1946, showing the petitioner's distributive interest as one-third of the net income plus his manager's salary, and each of his daughter's as one-third of the net profit. The petitioner and his daughters reported *305 their share of the distributive income from the business on their individual income tax returns for the years 1944, 1945 and 1946. All returns were prepared by the business accountant. In determining the deficiencies in controversy respondent determined that the partnership between the petitioner, Virginia Prentice, and Pauline Peters, his daughters, doing business as Wright Refrigeration Service, was not effective as a partnership for Federal income tax purposes, and that the ordinary net income of the business for the taxable years ended December 31, 1944, 1945 and 1946 should be included in the petitioner's gross income. The petitioner and his daughters, Virginia Prentice and Pauline Peters, did not, at any time during the taxable years 1944 through 1946, in good faith and acting with a business purpose, intend to join together as partners for the present conduct of the refrigeration business. Opinion The only question for our determination in this case is whether a partnership, valid for tax purposes, existed between petitioner and his two daughters. An amended petition alleged errors in respondent's disallowance of certain travel and entertainment expenses, the disallowance *306 of a repair item for a building, and a determination of $15,000 additional income. At the hearing petitioner conceded to respondent's determination of these adjustments; therefore they are not in issue. Petitioner contends that he formed a valid partnership with his daughters for the conduct of the refrigeration business under the name of Wright Refrigeration Service. Respondent, on the other hand, determined that "the ordinary net income of the business" was the income of petitioner because no partnership existed in the years 1944, 1945 and 1946. The correctness of this determination depends upon whether or not Robert A. Wright, in good faith and acting with a business purpose, really intended on June 12, 1944, to join together with Virginia Prentice and Pauline Peters in the present conduct of the refrigeration business. . Upon consideration of all the the facts, - the agreement, the execution of its provisions, the conduct of the parties, their statements, the testimony of other persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income, and the life span of *307 the partnership, - we find that the parties did not intend, on or about June 12, 1944, to join together in the present conduct of the business in good faith and with a business purpose. Furthermore, during the period May 1, 1944, to June 30, 1946, Virginia Prentice and Pauline Peters were not bona fide members of the partnership. An examination of the written agreement between petitioner and his daughters reveals that the life span of the partnership was limited to two years. No explanation was given for this limitation. In the absence of an explanation for such a limitation, we think that such an ephemeral arrangement for a very successful business refutes petitioner's allegations that he intended to create a bona fide partnership. The agreement, furthermore, expressly charged the petitioner with the management of the business, but it also absolved the daughters from a similar duty. The agreement provided that the daughters shall be under no obligation to devote time, attention or services to the business. The petitioner was granted the right to withdraw from the partnership business such sums of money as he might elect, but the daughters were specifically denied the right to *308 make withdrawals, or receive in cash any profits until they had paid the promissory notes. It may appear at first that the daughters were precluded from ever participating in the profits of the businesss since they were to pay the promissory notes from their share of the profits, but could not receive any profits until they had paid the note. Actually the problem as presented did not exist for the agreement further provided that the petitioner could disburse his daughters' profits to himself and apply their share of the proceeds on the notes. When we consider that these notes were demand notes, it is obvious that the petitioner still retained complete control over the profits of the business. Again we have factual evidence militating against the validity of the partnership. The partnership agreement also provided that each daughter would execute, at the time of signing the agreement, a Last Will and Testament which was irrevocable in so far as it related to the partnership business. The daughters' wills provided that if they predeceased the father their interest in the business would pass to him. In the alternative, if he predeceased them, their interest passed to their own families; *309 his property passed to Christine Wright. It is apparent that every clause in the partnership agreement, and even the wills springing from the agreement, enabled the petitioner to [retain] control of the business, the management, and the profits. Retention of control by the taxpayer over the management and income of the business does not evince a bona fide intent to conduct the business as a true partnership. Cf. ; affd., ; . When we examine the conduct of the parties and their contribution of services to the business, we see no evidence of a valid intention to form a partnership. The evidence clearly indicates that except for occasional conferences with the petitioner, the importance and nature of which is not shown, neither daughter contributed services to the business. In fact, during the years before us, both daughters were employed full time at other jobs. Nor is there evidence that the daughters helped build the business when it was a sole proprietorship. Petitioner, in an attempt to explain his daughters' absence from the business, said that his daughters and *310 Christine Wright were antipathetical and could not work harmoniously. It appears to us, if the daughters were bona fide partners, that between partners and an employee who could not work together, the problem arising from the incompatibility of the partners and the employee would be resolved by the dismissal of the employee, and not the removal of the partners from the business. It is even more obvious in this case where there is evidence of the mental instability of the employee. The conduct of the parties certainly disproves the existence of a bona fide intent to operate the business as a partnership. Cf. . The circumstances existing in May, 1944, make it apparent that no contribution of original capital could be expected from the daughters. They were salaried employees without independent means and their prospective earnings in their then present jobs were low. Each daughter acquired her one-third interest in the business solely by making a promissory note payable to the petitioner on demand. Actual payments were not made until the spring of 1946, just before the partnership agreement expired. Lack of capital contribution *311 originating with themselves is not in itself determinative of the partnership status of the daughters, yet the presence or absence of a capital contribution is a significant test of whether the parties intended to form a bona fide partnership. Here the lack of a capital contribution supports the respondent's determination. An analysis of the control of the business income and the purpose for which it was used further indicates the lack of a bona fide intent to form a valid partnership. From May, 1944, to June 30, 1946, with the exception of $866.44 paid to one daughter and $256.44 to the other daughter, neither one kept any part of the $70,600.17 which the petitioner distributed to them out of the income of the business. The money was either left in the business, used to pay income taxes, or used to pay the notes. However, during the same period he withdrew $22,500 in salary and an additional $33,682.88 from the earnings. The daughters received this slight benefit because they were not free to enjoy the fruits of the business until the promissory notes were paid. It was only when these obligations were met that the daughters would be allowed to participate in the profits of the business. *312 Thus, the withholding of the fruits of the business is another fact which impugns the validity of the partnership. See . We recognize that the creation of a corporation immediately following the expiration of the two years established in the partnership agreement does not, in itself, affect the validity of the partnership agreement. However, the action of the daughters in transferring their stock voting rights connotes the petitioner's never ending intention to control the business. The daughters transferred their voting rights to the petitioner for a term of 21 years. When these rights were added to the petitioner's interest, he was enabled to exercise the identical control of the business, while operating as a corporation, that he exercised when the business was a sole proprietorship. The petitioner while operating under the cloak of a corporate charter exercised complete domination of the corporation. In the short span of two years and a few days the business formed allegedly changed from a sole proprietorship to a partnership to a corporation, but the methods of operation and, particularly, control of the business activities *313 remained unchanged and entirely within petitioner. Again this retention of control is further evidence that the intention to form a bona fide partnership for the two years between the sole proprietorship and the corporation was not present. See We hold, therefore, that respondent did not err in including the net income of the business, as adjusted by the respondent, in the gross income of the petitioner, and therefore the determination of the deficiencies is approved. Decision will be entered for the respondent.